USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___9/30/19___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X

MOHAMMED ISLAM and                          :     18 Civ. 04895 (RA) (RWL)
MOHAMMED SIDDIK, individually and           :
on behalf of all others similarly situated, :     **DECISION AND ORDER:**
                                            :     **MOTION FOR CONDITIONAL**
                                            :     <u>**COLLECTIVE CERTIFICATION**</u>
                                            :
                    Plaintiffs,             :
                                            :
        - against -                         :
                                            :
LX AVENUE BAGELS, INC., d/b/a TAL BAGELS,   :
AMIR RAM BAGELS, INC., d/b/a TAL BAGELS,    :
TAL ON 1st INC., d/b/a TAL BAGELS,          :
MOHAMMAD KAMAL, IMANUEL HALON               :
AMIR RAM, and HOSSAM ZEBIB,                 :
                                            :
                    Defendants.             :
----------------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiffs filed this action against three restaurants and their owners, claiming

violations of wage and hours laws under the Fair Labor Standards Act ("FLSA") and the

New York Labor Law ("NYLL").   Before the Court is Plaintiffs' motion for an order (1)

conditionally certifying their FLSA claim as a representative collective action pursuant to

29 U.S.C. § 216(b); (2) requiring Defendants to produce within 14 days contact

information for all potential collective action members who worked at Defendants'

restaurants from June 1, 2012 to the present; (3) approving their proposed form of notice

("Notice") and authorizing the same to be disseminated to potential members of the

collective by mail and email, as well as requiring Defendants to post the Notice in multiple

languages in each of the three restaurants where employees are likely to view it; (4)

permitting Plaintiffs to disseminate a proposed reminder notice ("Reminder Notice") to

potential collective members 30 days after sending the initial Notice; and (5) applying a six-year statute of limitations and equitably tolling it until the expiration of the period within which additional plaintiffs may opt in to the collective action.[1]  For the reasons that follow, Plaintiffs' motion is GRANTED IN PART and DENIED IN PART.

### Relevant Background[2]

Defendants operated bagel-deli stores at three New York City locations: 1228 Lexington Avenue, New York, New York 10028 (LX Avenue Bagels, Inc.), 333 East 86th Street, New York, New York 10028 (Amir Ram Bagels, Inc.) and 357 East 1st Avenue, New York, New York 10010 (Tal on 1st, Inc.).  Defendants Kamal and Zebib oversaw operations of the three stores.  Among other tasks, Kamal and Zebib managed and supervised employees, paid employees' salaries, and monitored performance.  The three stores shared many of the same attributes such as name ("Tal Bagels"), menu and uniforms.  Many employees performed their work at all three locations.

Plaintiff Islam worked for Defendants for almost 21 years, between 1996 and 2017. Islam performed a variety of jobs including cashier, delivery person, cook, porter, dish washer and deli worker at all three locations.  Islam claims that he worked 72-84 hours

---

[1] On September 25, 2019, Defendants filed a letter asking the Court to stay decision on this motion because of a pending collective action in this District filed on behalf of a different plaintiff against the same defendants as are named here. (Dkt. 57.) Plaintiffs opposed that request with a letter on September 27, 2019. (Dkt. 59.) The Court declines to stay its decision, particularly given that Plaintiffs' request comes over three months after filing its motion for certification and after the Court had nearly finalized this decision.

[2] The factual background is drawn from Plaintiffs' First Amended Complaint dated March 25, 2019 (Dkt. 22) and the declarations of Plaintiffs Mohammed Islam dated June 12, 2019 (Dkt. 33-5, "Islam Decl.") and Mohammed Siddik (Dkt. 33-6, "Siddik Decl."), both dated June 12, 2019, filed in support of Plaintiffs' motion for conditional collective certification.

per week, was paid a flat weekly salary below minimum wage, and did not receive overtime compensation.  Plaintiff Siddik worked for Defendants from September 2015 to March 2018 at the 1228 Lexington Avenue location.  He alleged that he worked up to 72 hours per week.  Like Islam, Siddiq was paid a flat salary below minimum wage and did not receive overtime compensation.[3]

Islam and Siddiq each state that "based on my observations [of the work others did] and conversations [with other employees]" they know that other employees at the each of the stores were also "subjected to the same unlawful employment practices." (Islam Decl. ¶ 14, *see also id.* ¶¶ 28-30; Siddik Decl. ¶ 13, *see also id.* ¶¶ 26-29.) According to Plaintiffs, Defendants "enforced a common policy, applicable to all non-exempt employees, of failing to pay minimum wage for all hours worked and overtime pay for hours worked in excess of 40 per week."  (Islam Decl. ¶ 27; Siddik Dec. ¶ 28.)  They each identify by name (some by first and last name, some only by first name) and position (e.g., deli worker, cashier, delivery person, etc.) at least 10 additional individuals who were subjected to the alleged practices.  Neither Islam or Siddiq, however, recount any

---

[3] Defendants dispute Islam and Sikkik's alleged employment status.  According to Defendants, and the sworn testimony of Defendant Kamal, Islam was the sole manager of the Lexington Avenue location and therefore an exempt employee under the FLSA, while Siddik was solely an employee of Islam's and never an employee of Defendants. (Declaration of Mohammed Kamal dated August 6, 2019, Dkt. 40 ("Kamal Decl."), ¶¶ 8-12.)  For purposes of this motion for conditional certification, however, the Court does not resolve factual disputes and accepts the Plaintiffs' allegations as true.  *Vasto v. Credico (USA) L.L.C.*, No. 15 Civ. 9298, 2016 WL 2658172, at *3 n.1 (S.D.N.Y. May 5, 2016) (on motion for conditional certification, a court will "assume[] all non-conclusory facts alleged by plaintiffs to be true"); *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 661, 664 (S.D.N.Y. 2013) (same); *Lynch v. United Services Automobile Association*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) (same).

specific conversation or observation and provide no specifics as to the compensation received by any other employee.

Both Islam and Siddiq allege that they were fired by Kamal when they complained about Defendants' improper pay practices.

## Legal Standards for Certification of Collective Action

The Court first considers whether the collective action sought by Plaintiffs should be certified.  The Court concludes that it should.

## A.  The FLSA and Section 216(b) Collective Actions

The FLSA was enacted to remediate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers."  29 U.S.C. § 202(a).  The FLSA requires that any employee who is not statutorily exempt be paid at least the federal statutory minimum wage for the first 40 hours of work in a given week, 29 U.S.C. § 206(a), and that they receive "a rate not less than one and one-half times the regular rate at which he is employed" for overtime, or time worked in excess of 40 hours per week.  29 U.S.C. § 207(a)(1).  "Under neither [the FLSA or the NYLL] will a fixed salary be deemed to include an overtime component in the absence of an express agreement."  *Francois v. Mazer*, No. 09 Civ. 3275, 2012 WL 653886, at *4 (S.D.N.Y. Feb. 28, 2012) (citing *Wong v. Hunda Glass Corp.*, No. 09 Civ. 4402, 2010 WL 2541698, at *2 (S.D.N.Y. June 23, 2010)).

The FLSA allows workers to initiate collective actions to recover minimum and overtime wages on behalf of similarly situated employees.  *See* 29 U.S.C. § 216(b).  The statute provides in pertinent part:

> An action . . . may be maintained against any employer . . . in
> any Federal or State court of competent jurisdiction by any

> one or more employees for and in behalf of himself or
> themselves and other employees similarly situated.   No
> employee shall be a party plaintiff to any such action unless
> he gives his consent in writing to become such a party and
> such consent is filed in court in which such action is brought.

29 U.S.C. § 216(b).

Designating a collective in an FLSA action differs from certification of a class action under Rule 23 of the Federal Rules of Civil Procedure in that potential FLSA collective members must affirmatively opt into the litigation, rather than opt out.  *See Lianhua Weng v. Kung Fu Little Steamed Buns Ramen Inc.*, No. 17 Civ. 273, 2018 WL 1737726, at *2-3 (S.D.N.Y. March 26, 2018) (discussing the differences between an FLSA collective action and a Rule 23 class action); *Contrera v. Langer*, 278 F. Supp. 3d 702, 713 (S.D.N.Y. 2017) (same).   Moreover, a proposed FLSA collective need not meet the Rule 23 prerequisites of numerosity, typicality, commonality, and representativeness.  *Bittencourt v. Ferrara Bakery & Cafe Inc.*, 310 F.R.D. 106, 111 (S.D.N.Y. 2015); *see also Lianhua Weng*, 2018 WL 1737726, at *2; *Contrera*, 278 F. Supp. 3d at 713.

## B.  Section 216(b)'s Two-Step Collective Certification Process

The FLSA itself "does not prescribe any procedures for approval of collective actions."  *Contrera*, 278 F. Supp. 3d at 712 (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).   However, "district courts 'have discretion, in appropriate cases, to implement [Section 216(b) ] . . . by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs."  *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (alterations in original) (quoting *Hoffmann-La Roche*, 493 U.S. at 169). "Orders authorizing notice are sometimes referred to as orders 'certifying' a collective action, even though the FLSA does not contain a

certification mechanism." *Contrera*, 278 F. Supp. 3d at 712 (citing *Myers*, 624 F. 3d at 555 n.10).

The Second Circuit has endorsed a two-step method used by district courts in determining whether to exercise their discretion to certify a collective action under Section 216(b) and to permit notice to be sent to potential opt-in plaintiffs. *Myers*, 624 F.3d at 554-55 (referring to the two-step process as "sensible"); *see also Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016) ("In *Myers*, we endorsed a two-step process for certifying FLSA collective actions"); *Hamadou*, 915 F. Supp. 2d at 660-61 (discussing and applying the two-step process); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 321 (S.D.N.Y. 2007) (same).

At the first step – the present stage of this litigation – a district court may "mak[e] an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers*, 624 F.3d at 555 (citing *Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819, 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006)); *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997). Thus, "[t]he threshold issue in deciding whether to authorize class notice in an FLSA action is whether plaintiffs have demonstrated that potential class members are 'similarly situated.'" *Sbarro*, 982 F. Supp. at 261 (citing 29 U.S.C. § 216(b)).

Though "[n]either the FLSA nor its implementing regulations define the term 'similarly situated, . . . courts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Id.*; *Myers*, 624 F.3d at 555 (quoting *Sbarro*). Employees identified as similarly situated to named plaintiffs need

not be "identical in [to them] all respects," *Raniere v. Citigroup Inc.*, 827 F. Supp. 2d 294, 323 (S.D.N.Y. 2011)*, reversed on other grounds*, 533 F. App'x 11 (2d Cir. 2013). It follows that "courts may conditionally certify collectives of individuals with a variety of job titles, but only where a common unlawful policy is shown." *Liping Dai v. Lychee House, Inc.,* No. 17 Civ. 6197, 2018 WL 4360772, at *10 (S.D.N.Y. Aug. 29, 2018).

At the second stage of certification, which occurs at a future juncture, "with the benefit of additional factual development, the district court determines whether the collective action may go forward by determining whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs." *Glatt*, 811 F.3d at 540 (citing *Myers*, 624 F.3d at 555); *see Genxiang Zhang v. Hiro Sushi at Ollie's Inc.*, No. 17 Civ. 7066, 2019 WL 699179, at *5 (S.D.N.Y. Feb. 5, 2019) ("After discovery is complete, the court will evaluate the full record before it, in order to determine whether the opt-in plaintiffs are, in fact, similarly situated") (citing *Fasanelli*, 516 F. Supp. 2d at 321). At the second stage, "[t]he action may be 'de-certified' if the record reveals that [the opt-in plaintiffs] are not [similarly situated], and the opt-in plaintiffs' claims may be dismissed without prejudice." *Myers*, 624 F.3d at 555.

## C.   Legal Standard for Conditional Collective Certification

At the conditional certification stage, although a plaintiff's "modest factual showing cannot be satisfied simply by unsupported assertions," *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 443 (S.D.N.Y. 2012) (internal quotations omitted), "[t]he burden on plaintiffs is not a stringent one, and the Court need only reach a preliminary determination that potential plaintiffs are 'similarly situated.'" *Sbarro*, 982 F. Supp. at 261; *see also Hamadou*, 915 F. Supp. 2d at 661-62 (describing the burden as "very low" or "minimal")

(quoting *Raniere*, 827 F. Supp. 2d at 368, and *Damassia*, 2006 WL 2853971, at *3).  "The leniency of this requirement is consistent with the broad remedial purpose of the FLSA." *Morales v. Plantworks, Inc.*, No. 05 Civ. 2349, 2006 WL 278154, at *2 (S.D.N.Y. Feb. 2, 2006) (citing *Sbarro*, 982 F. Supp. at 262).

Plaintiffs can meet their burden at the conditional certification stage by "relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." *Hamadou*, 915 F. Supp. 2d at 661 (quoting *Raniere*, 827 F.Supp.2d at 319.  For this initial stage, courts "regularly rely on . . . hearsay statements in determining the propriety of sending notice." *Salomon v. Adderley Industries, Inc.*, 847 F. Supp. 2d 561, 563 (S.D.N.Y. 2012).  Although the plaintiff's allegations and factual assertions "cannot be entirely conclusory", they need not contain a high level of specificity.  *Liping Dai*, 2018 WL 4360772, at *5 (citing *Morales*, 2006 WL 278154, at *2-3).[4]

"In ascertaining whether potential opt-in plaintiffs are similarly situated" at the conditional certification stage, "courts should not weigh the merits of the underlying claims."  *Hamadou*, 915 F. Supp. 2d at 662 (citing *Lynch*, 491 F. Supp. 2d at 368).  "At this procedural stage, the court does not resolve factual disputes, decide substantive

---

[4] For example, courts frequently grant conditional certification when plaintiffs identify similarly situated employees only by nicknames, job titles, or nationalities.  *See, e.g.*, *Mendoza v. Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629, 2013 WL 5211839, at *5 (S.D.N.Y. Sept. 16, 2013) (rejecting defendants' contention that failure to identify potential opt-in plaintiffs by name should preclude conditional certification); *Hernandez v. Immortal Rise, Inc.*, No. 11 CV 4360, 2012 WL 4369746, at *4 (E.D.N.Y. Sept. 24, 2012) (finding no case that "ha[s] ever explicitly required plaintiffs to identify similarly situated employees by name to obtain conditional certification."); *Guzman v. VLM, Inc.*, No. 07 CV 1126, 2007 WL 2994278, at *1 n.2-3 (E.D.N.Y. Oct. 11, 2007) (granting conditional certification where plaintiffs' affidavits identified similarly situated employees primarily by first names, nicknames, or nationalities).

issues going to the ultimate merits, or make credibility determinations." *Lynch*, 491 F. Supp. 2d at 368; *see also Fasanelli*, 516 F. Supp.2d at 322 (the "preliminary documents" assessed at the first stage of certification "necessarily contain unproven allegations").

In the event a plaintiff's factual allegations are sufficient with respect to only a subset of employees within their proposed collective, "[c]ourts performing the collective action certification inquiry have discretion to certify a different group of individuals than that sought by the plaintiff." *Guan Ming Lin v. Benihana National Corp.*, 275 F.R.D. 165, 172 (S.D.N.Y. 2011); *see, e.g.*, *Genxiang Zhang*, 2019 WL 699179, at *7-8 (granting conditional certification, but narrowing the job categories included in the collective); *She Jian Guo v. Tommy's Sushi Inc.*, No. 14 Civ. 3946, 2014 WL 5314822, at *4 (S.D.N.Y. Oct. 16, 2014) (same).

## D.   The Requirements for Conditional Certification are Met

Plaintiffs seek conditional certification of a collective of all "all potential collective action members who worked for Defendants at any of Defendants' three locations at any time from June 1, 2012 to present." (Notice of Plaintiffs' Motion for Conditional Certification (Dkt. 32) at 1.)  In applying the legal standards set forth above, the Court finds that Plaintiffs have, in part, carried their low burden at this procedural stage. Plaintiffs have sufficiently identified similarly situated employees to merit conditional certification of an FLSA collective that includes cashiers, cooks, delivery workers, porters, dishwashers and deliworkers employed at Defendants' stores.

### 1.  Single Enterprise Status of the Three Restaurant Locations

As an initial matter, the Court finds that conditional certification is warranted with respect to all three restaurant locations.  "When evaluating whether a group of distinct but

closely affiliated entities should be treated as a single employer for FLSA purposes, courts consider the interrelation of operations, including whether there is centralized control of labor relations, common management, and common ownership or financial control." *Taveras v. D & J Real Estate Management II, LLC*, 324 F.R.D. 39, 41 (S.D.N.Y. 2018) (citing *Juarez v. 449 Restaurant, Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014)).  Courts generally defer the single enterprise analysis to the second stage of certification, because "[w]hether or not Defendants operated as a single enterprise is a complicated and fact-specific inquiry[,]" which is not properly determined at the [conditional] certification stage. *Uraga v. Amici 519 LLC*, No. 17 Civ. 3547, 2018 WL 3579850, at *4 (S.D.N.Y. July 25, 2018) (quoting *Escamilla v. Uncle Paul's Pizza & Café Inc.*, No. 16 Civ. 6305, 2017 U.S. Dist. LEXIS 206731, at *11-13 (S.D.N.Y. May 18, 2017)); *see Castro v. Spice Place, Inc.*, No. 07 Civ. 4657, 2009 WL 229952, at *3 (S.D.N.Y. Jan. 30, 2009) (delaying conditional certification ruling until plaintiff could "present some evidence to show that defendants maintained a common scheme or policy, . . . [s]ince the defendants' status as a joint employer has not yet been resolved").

Accordingly, "[c]ourts often authorize notice to employees of restaurant locations where the named plaintiff did not work at all, as long as there is sufficient evidence that those employees were subject to the same allegedly unlawful policies."  *Juarez*, 29 F. Supp. 3d at 370.  The fact that defendants may operate as "distinct corporate entities does not insulate them from liability at this stage."  *Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 559 (S.D.N.Y. 2015) (internal quotations omitted).  Provided the named plaintiffs sufficiently allege that defendants constitute a single enterprise under the lenient standard applied at the conditional certification stage, "all Defendants that compose the

enterprise count as Plaintiff[s'] employer and are thus potentially liable for violations of the FLSA that took place at any of the [ ] locations." *Id.* (internal quotations omitted).

Here, Plaintiffs have sufficiently alleged a number of indicia that the three restaurant locations at issue are a single integrated enterprise.  These include, for example, the restaurants having the same name, menus and uniforms; their sharing employees and implementing the same training; and having common management. *See, e.g., Uraga*, 2018 WL 3579850, at *4 (allegations that defendant restaurants had identical menus, interchangeable supplies and employees, and a common logo and decor were "sufficient for the purposes of conditional certification"); *Escamilla*, 2017 U.S. Dist. LEXIS 206731, at *12-13 (assertions that defendant employers jointly owned two restaurants, treated employees as interchangeable, and shared ingredients and supplies were sufficient to support single enterprise theory at conditional certification stage); *Juarez v. 449 Restaurant, Inc.*, 29 F. Supp.3d 363, 367-68 (S.D.N.Y. 2014) (allegations that three diners had same décor, menus, uniforms, management, and shared employees were sufficient to support single enterprise theory on conditional certification).  Accordingly, conditional certification is granted with respect to all three store locations.

### 2.   Other Employees Similarly Situated to Plaintiffs

The Court finds that Plaintiffs have made the requisite "modest factual showing" that various non-exempt staff at Defendants' restaurants are similarly situated "victims of a common policy or plan that violated the law" to support conditional certification of a collective of such employees.  *Sbarro*, 982 F. Supp. at 261.  Both Islam and Siddik have related knowledge – based on personal observations of and conversations with many other employees performing a variety of functions similar to those performed by one or

the other Plaintiff – that Defendants did not properly pay non-exempt employees minimum wage or overtime compensation. (*See, e.g.*, Islam Decl. ¶ 27; Siddik Dec. ¶ 28.)

In opposition, Defendants contend that Plaintiffs' assertions of a common policy and Defendants' treatment of other employees are too conclusory to support conditional certification.  Plaintiffs, however, name or otherwise identify specific employees that were subject to "the same unlawful compensation policies" and have done so based on their personal observations of and conversations with those individuals.  Other courts have granted conditional certification on similar records.  *See, e.g., Garcia v. Spectrum of Creations, Inc.*, 102 F. Supp.3d 541, 548 (S.D.N.Y. 2015) (granting certification on the basis of declarations listing names and job titles of 15 coworkers with whom plaintiffs spoke); *Ramos v. Platt,* No. 13 Civ. 8957, 2014 WL 3639194, *2 (S.D.N.Y. July 23, 2014) (granting certification on the basis of declaration referencing conversations with seven co-workers, several of whom were identified by name); *Romero v. La Revise Associates, LLC,* 968 F. Supp.2d 639, 645-46 (S.D.N.Y. 2013) (granting certification on the basis of plaintiff's declaration attesting to personal observation of personally observing FLSA violations with respect to other tipped employees); *see also Immortal Rise*, 2012 WL 4369746, at *4 (noting there is no requirement that a plaintiff state the full names of those allegedly similarly situated).

To be sure, some courts have denied conditional certification where plaintiffs submitted threadbare, overly conclusory allegations of similarly situated employees.  *See, e.g., Fernandez v. Sharp Management Corp.*, No. 16 Civ. 0551, 2016 WL 5940918, *3 (S.D.N.Y. Oct. 13, 2016) (denying certification for coworkers other than those having plaintiff's job title where plaintiffs' affidavits lacked sufficient specificity and detail); *Guo v.*

*Tommy's Sushi Inc.*, No. 14 Civ. 3964, 2014 WL 5314822, *3 (S.D.N.Y. Oct. 16, 2014) (declining to conditionally certify broad collective other than delivery persons due to plaintiffs' vague, conclusory and unsupported allegations about other employees); *Sanchez v. JMP Ventures, L.L.C.,* No. 13 Civ. 7264, 2014 WL 465542, *2 (S.D.N.Y. Jan. 27, 2014) (denying certification of expansive class of all tipped employees where plaintiff failed to provide any detail as to a single observation or conversation).

Both Islam and Siddik's declarations come close to the line of those cases denying certification.  Neither provides an example of any specific conversation, nor any examples of the hours worked by or salaries received by any other employee.  But they do name, or otherwise identify, more than ten other employees holding a variety of positions. Moreover, both Islam and Siddik have provided declarations attesting to the policy applied to the other employees; in other words, each corroborates the other, which creates a firmer foundation.  *See Garcia*, 102 F. Supp.3d at 548-49 ("Here, of course, ther are two employees who corroborate each others' personal treatment and observations of the treatment of other employees.")  And "[w]hile it would be helpful to have the time and dates of conversations," or the particular hours worked or salaries received by other employees, "it is not surprising that plaintiffs would be unable to recall those specifics." *Id.* at 549.

In many cases addressing conditional certification, courts cabin the collective to employees who had or have the same position as plaintiffs.  *See, e.g.*, *Fernandez*, 2016 WL 5940918, at *4 (granting certification as to superintendents but not other apartment building personnel such as security staff, porters and janitors); *Garcia*, 102 F. Supp.3d at 549-550 (granting certification as to food preparers and delivery persons but denying as

to who performed other non-exempt job functions).  This case, however, does not lend itself to similar analysis given that Islam, an employee for 21 years, purports to have fulfilled  numerous roles from cashier to porter to cook to delivery person (among others). (Islam Decl., ¶ 6.)  On a lesser scale, Siddik claims to have filled at least three different functions (delivery person, cook and porter). (Siddek Decl., ¶ 6.)  Each position held by Islam or Siddik is mirrored by the positions held variously by the other employees identified by Islam and Siddik as having been subject to the same compensation policies. Accordingly, the collective may be conditionally certified with respect to each of those positions rather than confined to a subset of them.[5] *See Romero*, 968 F. Supp.2d at 649 (certifying collective as to runners, bussers, waiters, barbacks, bartenders, chefs, cooks, food preparers, dishwashers and porters where defendants provided no explanation as to why the proposed definition was overbroad); *Lujan v. Cabana Management*, No. 10 CV 75, 2011 WL 317984, *10  (E.D.N.Y. Feb. 1, 2011) (declining to limit collective to bussers and runners because allegations of a policy applied across job classifications "suggests a distinction without a difference"); *Cano v. Four M Food Corp.*, No. 08 Civ. 3005, 2009 WL 5710143, at *7 (S.D.N.Y. Feb. 3, 2009) (collecting cases).

The Court recognizes that the documents presently before it necessarily contain unproven allegations and that "in resolving this motion, the Court assumes all non-conclusory facts alleged by [P]laintiffs to be true."  *Vasto*, 2016 WL 2658172, at *3 n.1. The second certification stage may well warrant a different outcome depending on the

---

[5] Islam and Siddik also identify an additional role – baker – fulfilled by other employees. Because neither Islam nor Siddik specify having been a baker during their employment with Defendants, conditional certification is not warranted as to employees in that position.

record developed at that time.  But at this preliminary, conditional stage, the low bar to certification is met.

**E.    Court-Authorized Form of Notice**

Having approved conditional certification of the collective action, the Court turns to issues concerning the Notice to be disseminated.  Defendants challenge several aspects of Plaintiffs' proposed Notice.  These disputes concern,  among others discussed below, the statute of limitations, the length of the opt-in period, the extent of reference to defense counsel in the Notice, the means of distribution, and the method by which opt-in forms should be returned.  As discussed in the general standards governing notice of collective actions, the Court addresses each of the disputed issues below, dividing them into issues of temporal scope and issues of content.

**1.  General Standards of Collective Action Notice**

Once a court finds that a named plaintiff has satisfied his or her burden at the conditional certification stage, it "may proceed to authorize issuance of a notice informing potential additional plaintiffs of their opportunity to opt into the lawsuit."  *Liping Dai*, 2018 WL 4360772, at *5 (citing *Lynch*, 491 F. Supp. 2d at 367).  Although the FLSA itself "has no provision for issuing notice in a collective action, it is 'well settled' that district courts have the power to authorize an FLSA plaintiff to send such notice to other potential plaintiffs."  *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003) (quoting *Sbarro*, 982 F. Supp. at 261).  No authority "ha[s] specifically outlined what form court-authorized notice should take nor what provisions the notice should contain."  *Fasanelli*, 516 F. Supp. 2d at 323 (noting also that in *Hoffmann La-Roche*, the Supreme Court "abstained from reviewing the contents of a proposed notice

under § 216(b)").  District courts thus possess "broad discretion," to "monitor[ ] preparation and distribution of the [n]otice to ensure that it is timely, accurate, and informative."  *She Jian Guo*, 2014 WL 5314822, at *4 (first alteration in original) (internal quotations omitted) (quoting *Hoffmann La-Roche*, 493 U.S. at 172).  In utilizing their discretion to approve the details of notice, "courts should consider the overarching policies of the notice provisions of Section 216(b) . . . which include achieving judicial efficiency and lowering individual costs for plaintiffs."  *Liping Dai*, 2018 WL 4360772, at *6 (citing *Fasanelli*, 516 F. Supp. 2d at 323).

### 2.  Temporal Scope of the Notice

#### a.  Notice Period:  Three Years vs. Six Years

The statute of limitations under the FLSA is two years, but is extended to three years in cases where, as here, willful misconduct is alleged.  29 U.S.C. § 255(a).  District courts thus "routinely" apply the three-year statute of limitations to the notice period when plaintiffs plead a willful violation of the FLSA.  *Cohen v. Gerson Lehrman Group, Inc.*, 686 F. Supp. 2d 317, 331 (S.D.N.Y. 2010); *see, e.g.*, *Vasto*, 2016 WL 2658172, at *16 (approving a three-year limitations period in defining the scope of notice because plaintiffs alleged a willful violation of the FLSA).

Notwithstanding this "routine" practice, Plaintiffs seek to extend notice to employees for a six-year period.  Plaintiffs argue that their claims include claims under the NYLL, which has a six-year statute of limitations.  N.Y. Labor Law § 198(3).  Indeed, some courts have approved six-year limitation periods where plaintiffs have asserted claims pursuant to both the FLSA and NYLL.  *See, e.g.*, *Fonseca v. Dircksen & Talleyrand, Inc.*, No. 13 Civ. 5124, 2014 WL 1487279, at *6 (S.D.N.Y. April 11, 2014)

(approving request for six-year notice period); *Winfield v. Citibank, N.A.*, 843 F. Supp.2d 397, 410 (S.D.N.Y. 2012) (same).

Other courts, however, approve only the three-year period, which is "the maximum time period to join an FLSA collective action." *Garcia*, 102 F. Supp.3d at 551; *accord Romero*, 968 F.Supp.2d at 648-49 (distinguishing three-year period under FLSA from six-year period under NYLL and rejecting plaintiff's request to apply six-year period); *Ramos*, 2014 WL 3639194, at *4 (rejecting six-year period in favor of three-year period). After all, the NYLL does not provide for a collective action as distinct from a class action, which is a different procedure with different requirements. *See Alvarez v. IBM Restaurants Inc.*, 839 F. Supp.2d 580, 587 (E.D.N.Y. 2012) ("To the extent the Plaintiffs seek to provide notice to potential plaintiffs that fall outside of the putative FLSA class, but may have claims under the N.Y. Labor Law, they must follow discovery and notice procedures applicable to class actions under the Federal Rules of Civil Procedure.").

Where, as here, no class action has been certified pursuant to Fed. R. Civ. P. 23, "[i]t would be confusing to employees who are ineligible for the FLSA opt-in class to receive the opt-in notice, which does not relate to any state law claims." *Hamadou,* 915 F. Supp.2d at 558). In this case, the Court agrees. *See Romero*, 2014 WL at *4 (finding argument that six-year notice period will cause confusion is more persuasive than argument that using the longer period is more economical). Accordingly, the Court approves a three-year notice period for the collective action.

### b. Opt-In Period

Plaintiffs seek to allow opt-in plaintiffs to join this litigation for a period of 60 days following dispersal of the notice. That is consistent with the law of this district where the

courts "have coalesced around a standard 60-day notice period" (although permit longer periods on consent). *Mark v. Gawker Media LLC*, No. 13 Civ. 4347, 2014 WL 5557489, at *1 (S.D.N.Y. Nov. 3, 2014). The Court therefore rejects Defendants' bid for a period than shorter 60 days.

### c. Equitable Tolling

Plaintiffs ask the Court toll the statute of limitations for all potential opt-in plaintiffs "from June 9, 2019 (the original deadline for filing of this instant motion) until the deadline for potential opt-in plaintiffs (following distribution of notice to those potential opt-ins) expires." (Pl. Mem. at 24.) Defendants oppose this request. Although Defendants do not articulate their reasoning with clarity, the Court agrees that equitable tolling should not be applied at this time.

"Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." *Johnson v. Nyack Hospital*, 86 F.3d 8, 12 (2d Cir. 1996) (citing *Bowers v. Transportacion Maritima Mexicana, S.A.*, 901 F.2d 258, 264 (2d Cir. 1990)). The Second Circuit has cautioned that "equitable tolling is considered a drastic remedy applicable only in 'rare and exceptional circumstance[s],'" *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011) (alteration in original) (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000)), "where a plaintiff has been 'prevented in some extraordinary way from exercising his rights.'" *Johnson*, 86 F.3d at 12 (quoting *Miller v. International Telephone and Telegraph Corp.*, 755 F.2d 20, 24 (2d Cir. 1985), *cert. denied*, 474 U.S. 851 (1985)). In the context of conditional certification under the FLSA, equitable tolling "might apply . . .

where the defendant has concealed the existence of a cause of action from the plaintiffs." *Mark*, 2014 WL 5557489, at *2.  Plaintiffs have not made any such allegation here.

Courts have also equitably tolled the FLSA statute of limitations in cases where "courts' heavy dockets and understandable delays in rulings" could time bar opt-in plaintiffs "whose putative class representatives and their counsel are diligently and timely pursuing the[ir] claims." *McGlone*, 867 F. Supp. 2d at 444-45; *accord Contrera*, 278 F. Supp. 3d at 724 ("the test for equitable tolling is not concerned with the diligence of a plaintiff who has already timely filed a claim, but rather with the diligence of a plaintiff who is seeking the application of the doctrine"). That said, courts have denied equitable tolling where delays of many months have occurred.  *Mark*, 2014 WL 5557489, at *3 (court's 11-month delay not sufficiently "extraordinary" to warrant equitable tolling); *compare Viviri v. White Plains Hospital Medical Center*, 320 F.R.D. 344, 355-56 (S.D.N.Y. 2017) (granting equitable tolling due to six-month period between fully briefed motion for conditional certification and court's order) *with Vasto*, 2016 WL 2658172, at *16 (court's five-month delay "not of a magnitude that would justify tolling").  As of the date of this Decision and Order, only less than four months have passed since the filing of Plaintiffs' motion.  The Court does not find this period to be a "substantial gap," *Viriri*, 320 F.R.D. at 355.

Nor have Plaintiffs offered specific details as to any individual potential opt-in plaintiff who intends to join the collective but who risks becoming time-barred or has been "prevented in some extraordinary way from exercising his rights." *Johnson*, 86 F.3d at 12 (quoting *Miller*, 755 F.2d at 24); *see, e.g.*, *Liping Dai*, 2018 WL 4360772, at *12 ("Plaintiffs have not demonstrated that the claims of any potential opt-in plaintiffs would actually be barred") (citing *Whitehorn*, 767 F. Supp. 2d at 450); *Contrera*, 278 F. Supp. 3d at 724

("The plaintiffs on whose behalf equitable tolling is being sought have not been identified. . . . no specific information has been provided about any particular opt-in plaintiff's circumstances.  Thus, this Court cannot assess whether any potential opt-in plaintiff has diligently pursued his or her rights.")  Plaintiffs thus have not demonstrated a basis to equitably toll the statute of limitations on behalf of the entire collective in this case.  If it later becomes apparent that equitable tolling arguments apply to individual plaintiffs who have actually opted into this litigation, the Court will address those issues at the second stage of certification.

### 3.  Content of the Notice

#### a.  Balanced Disclosure of the Parties' Positions

In exercising their duty to oversee notice, courts have enforced a standard of "proportionality" in how the notice describes the parties' positions. *Hernandez v. Merrill Lynch & Co.*, No. 11 Civ. 8472, 2012 WL 1193836, at *5 (S.D.N.Y. April 6, 2012) (agreeing with defendants that proposed notice disproportionately emphasized plaintiffs' contentions); *see also Martin v. Sprint/united Management Company*, No. 15 Civ. 5237, 2016 WL 30334, at *17 (S.D.N.Y. Jan. 4, 2016) ("courts frequently direct plaintiffs to include a more expansive account of defendants' denials, as well as the status of the action, in the introduction section of a collective action notice").

Defendants correctly observe that Plaintiffs' proposed Notice gives disproportionately more exposition of Plaintiffs' claims than Defendants' defenses.  At the same time, Defendants' proposed revisions go too far and assert as fact what are disputed issues, such as whether Islam was an exempt employee and whether Defendants ever employed Siddik.

Accordingly, Plaintiffs shall replace the first two bullets of the proposed Notice with the following two bullets:

- Plaintiffs Mohammed Islam and Mohammed Siddik brought this lawsuit against Defendants on behalf of themselves and all other current and former employees who worked for Defendants as a cashier, delivery person, cook, porter, dish washer, and deli worker, at any time between June 1, 2015 and the present, at any of the following Tal Bagels locations: 1228 Lexington Avenue, New York, NY 10028, 333 East 86th Street, New York, NY 10028, and 357 1st Avenue, New York, NY 10010.  Plaintiffs claim that Defendants did not pay them time and one-half their regular hourly rate for all hours that they worked in excess of forty hours per week, in violation of the Fair Labor Standards Act and New York law.  Plaintiffs also claim that they were paid a flat weekly salary and were not paid the applicable minimum wage rate.

- Defendants deny Plaintiffs' claims and assert that all their employees have been paid appropriately.  Defendants deny Plaintiffs' claims that they failed to receive minimum wages and overtime pay as required by law.  Defendants also assert that neither Plaintiff is similarly situated to other former or current employees because Plaintiff Islam was a manager and therefore is exempt from wage and overtime laws, and Plaintiff Siddik was never employed by Defendants.

In addition, Plaintiffs shall modify the title of the notice on page 1 to delete "COURT AUTHORIZED" from the title so that it reads only "NOTICE OF LAWSUIT"; and, in the

sixth line of the notice, shall modify "The Court authorized this Notice" to "The Court authorized this Notice but has not given an opinion on the merits of the lawsuit."

### b.  Defense Counsel's Contact Information

Defendants request that any notice authorized by the Court include the contact information of Defendants' counsel, which Plaintiffs' proposed notice currently omits. Courts "'have generally concluded' that the contact information of defendants' counsel 'is appropriate for inclusion in a notice of collective action.'"  *Benavides*, 166 F. Supp. 3d at 486 (alteration omitted) (quoting *Bittencourt*, 310 F.R.D. at 118); *see also Guo*, 2014 WL 5314822, at *4 ("Inclusion of such information is routine").

Accordingly, the Notice shall include the following language requested by Defendants:  "Travis Law PLLC represents the Defendants in this case.  If you choose to join this case, you should not contact the Defendants' lawyers directly yourself."

### c.  Right to Separate Counsel

The Court also agrees with Defendants that the Notice must communicate potential opt-in plaintiffs' right to obtain counsel other than Plaintiffs' counsel.  *See, e.g., Diaz v. S&H Bondi's Department Store, Inc.*, No. 10 Civ. 7676, 2012 WL 137460, at *7 (S.D.N.Y. Jan. 18, 2012); *Lujan,* 2011 WL 317984 at *11; *Garcia*, 678 F. Supp.2d at 95 (directing plaintiffs "to modify the proposed Notice so that potential plaintiffs are informed that they may retain their own counsel, should they choose to join the within litigation, as an alternative to Plaintiffs' counsel's firm.").

The Court finds, however, that the proposed Notice sufficiently provides this information in Section 10 of the Notice (titled "Do I have a lawyer in this case?") and that the earlier Section 5 (titled "How do I join this collective action lawsuit?") does not violate

that standard.  The Consent To Join Form clearly provides the option for a plaintiff to choose another lawyer or to participate without a lawyer.  That said, the Court agrees that Section 10 should be modified to incorporate the information that "If you recover money from Defendants, Defendants may be required to pay your attorney's fees, whether you hire Akin Law Group PLLC, or another attorney."

### d.  Language of the Notice

Plaintiffs request that notice be distributed in English, Spanish, Bengali and any other language identified by Defendants.  Defendants have not opposed this request, and translation of court-authorized notice is commonly granted "to increase the effectiveness of the notice in reaching potential opt-in plaintiffs."  *Liping Dai*, 2018 WL 4360772, at *12; *see also Genxiang Zhang*, 2019 WL 699179, at *13.  At the same time, the Court finds that "any other language identified by Defendants" is not sufficiently specific and potentially unmanageable.  Accordingly, notice should be distributed in the following three languages:  English, Spanish and Bengali.

### e.  Distribution of the Notice

Plaintiffs request that the Court authorize dissemination of the Notice via regular mail and email and by posting the Notice (in multiple languages) at each of the three store locations "in a place where employees are likely to view it."  (Dkt. 32 at 2.)   Defendants do not oppose Plaintiffs' request to send notice to potential members of the collective via regular mail, but do object to email and posting at their stores.

Although email has some potential drawbacks in providing notice, its benefits have led courts to employ notice by email, along with other means, as a standard practice.  On one hand, email communications carry the risk of being modified or more broadly

disseminated than the parties originally intended. *Knox v. John Varvatos Enterprises Inc.*, 282 F. Supp.3d 644 (S.D.N.Y. 2017) (citing *Sharma*, 52 F.Supp.3d at 463).  On the other hand, "'given the reality of communications today,' email notification is more effective at notifying potential opt-in plaintiffs than mailed notice alone." *Id.* (citing *Pippins*, 2012 WL 19379, at *14). As such, email well serves the goal of making "as many potential plaintiffs as possible aware of this action and their right to opt in without devolving into a fishing expedition or imposing undue burdens on the defendants." *Morris v. Lettire Construction Corp.,* 896 F.Supp.2d 265, 273 (S.D.N.Y. 2012) (citation omitted). In short, "[n]otice of class actions by email have now become commonplace."  *Knox*, 52 F. Supp. At 463. Accordingly, Plaintiffs may notify potential plaintiffs by email in addition to regular mail.

Whether to post notice in employee common areas is another issue on which courts in this district tend to split.  *Compare Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114 (S.D.N.Y. 2014) ("Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail.") (internal citations and quotations omitted) with *Michael*, 2015 WL 1810157, at *4 ("absent a showing that a significant number of notices were returned as undeliverable, courts have refused to require posting of a collective action notice in the workplace.").  The Court appreciates "the potential disruption that can occur in the employer-employee relationship when an employer is required to post a notice in the workplace announcing that one or more employees have accused it of violating the law." *Knox*, 282 F. Supp.3d at 668.  Although Plaintiffs cite a number of the cases in which courts have permitted posting of notice at places of business, Plaintiffs have not provided

any basis to conclude that there will be any problem reaching current employees though mail or email.

Accordingly, the Court finds the physical posting of the Notice in the three store locations to be unnecessary.  *See id.* (reaching similar conclusion).

### f.   Return of Opt-in Forms

Plaintiffs' proposed Notice directs opt-in plaintiffs to return their forms directly to Plaintiffs' counsel.  Defendants contend that the forms should be returned to the Court instead.  "Courts have split on this issue."  *Diaz*, 2012 WL 137460 at *7 (comparing cases).

This Court concludes that in the circumstances of this case the consent forms should be returned to the Clerk of the Court. As explained above, potential plaintiffs are not required to use Plaintiffs' counsel and may select other counsel to represent them. Requiring that the forms be returned to Plaintiffs' counsel potentially discourages recipients from selecting counsel of their choice and thereby undermines the purpose of including the choice-of-counsel language in the Notice.  *See Hallissey v. America Online, Inc.*, No. 99 Civ. 3785, 2008 WL 465112, at *4 (S.D.N.Y. Feb. 19, 2008) (requiring consent forms to be mailed to the Court because of concerns that a contrary ruling might discourage opt-in plaintiffs from retaining their own counsel).

Accordingly, the Notice should be modified to provide that the opt-in forms be returned to the Clerk of Court, United States District Court, 500 Pearl Street, New York, NY 10007.

### g.  Reminder Notice

Plaintiffs seek approval of their sending a reminder notice 30 days after sending the initial notice.  Some courts have permitted reminder notices, because notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in. *See, e.g., Chhab v. Darden Rests., Inc.*, No. 11 Civ. 8345, 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013) (finding that reminder notice was appropriate because notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in).  Other courts have rejected reminder notices in the absence of any partiuclar demonstrated necessity warranting another notice.  *See, e.g., Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 357–58 (E.D.N.Y. 2012) (denying reminder notice request because plaintiffs did not identify why reminder notice was necessary).

Here, Plaintiffs have not put forth any reason justifying the need for a reminder notice. Accordingly, the Court will deny dissemination of the reminder notice, but without prejudice to Plaintiffs' ability to renew their request should circumstances warrant it.

### h.  Production of Employee Contact Information

Lastly, Plaintiffs ask the Court to order Defendants to produce a computer-readable data file containing "the names, last known mailing addresses, work locations and date of employment, of all potential collective action members who worked for Defendants at any of Defendants' three locations at any point from June 1, 2012 to present."  (Notice of Motion at 1.)  "Many courts have determined that discovery of contact information is appropriate at the notice stage in FLSA collective actions."  *Khamsiri*, 2012 WL 1981507, at *2; *see also Salomon*, 847 F. Supp. 2d at 566 ("To facilitate the notice

process, courts routinely order an employer to provide plaintiffs with information regarding potential opt-in plaintiffs").  The particular contact information requested is appropriate, and Defendants have not argued otherwise (apart from contending that no information should be provided at all because conditional certification should be denied).  However, the temporal scope must be modified to "June 1, 2015" to be consistent with the Notice period approved above.

Accordingly, within 14 days of the Court's Order approving a revised Notice, to the extent identified upon a reasonable search of data within Defendants' possession, custody or control, Defendants shall provide the names, last known mailing addresses, work locations and date of employment, of all potential collective action members who worked for Defendants at any of Defendants' three locations, consistent with the temporal scope and specific job categories for which the collective has been conditionally certified.

## Conclusion

For the foregoing reasons, Plaintiffs' motion to conditionally certify an FLSA collective action is GRANTED IN PART and DENIED IN PART as follows:

1. Issuance of notice to the collective is authorized, limited to cashiers, cooks, delivery workers, porters, dishwashers and deliworkers employed by Defendants at the three store locations from June 1, 2015 to the present.

2. Plaintiffs' request for equitable tolling of the statute of limitations is denied.

3. Plaintiffs shall meet and confer with Defendants to revise the proposed Notice consistent with this Decision and Order, and shall resubmit the revised proposed Notice for the Court's approval by October 15, 2019.

4.  Upon the Court's approval of the revised proposed Notice, the Notice may be disseminated consistent with this Decision and Order.

5.  Within 14 days of the Court's entry of an Order approving the revised proposed Notice, Defendants shall produce in electronic format the contact information for employees for the job categories and temporal scope consistent with this Decision and Order.

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:      September 30, 2019
            New York, New York

Copies transmitted to all counsel of record.